**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

Alexa Lutz, an individual,

Plaintiff,

v.

DMM, LLC d/b/a High Level Health, a Colorado Limited Liability Company,

Defendant.

_____

**VERIFIED COMPLAINT AND JURY DEMAND**
_____

**COMES NOW** Plaintiff Alexa Lutz, by and through counsel, Howard O. Bernstein, P.C., and makes her Verified Complaint, stating as follows:

### I.   PARTIES AND JURISDICTION

1. Plaintiff Alexa Lutz ("Lutz") is a female residing at 2275 Court Place, Apt 317, Denver, Colorado.

2. Defendant DMM, LLC d/b/a High Level Health ("DMM") is a Colorado Limited Liability Company organized and existing pursuant to the laws of the State of Colorado, with its principal office located at 395 Yuma Street, Denver, CO 80203.

3. This action presents claims under the laws of the United States for which the District Courts of the United States have original jurisdiction pursuant to 28 U.S.C. § 1331. The District Courts of the United States also have supplemental jurisdiction over the State claims

1

made within this complaint, which Lutz asserts are part of the same case or controversy pursuant to 28 U.S.C. § 1367 (a).

4.  Lutz filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Colorado Civil Rights Divisions on or about May 21, 2015.

5.  The EEOC issued Lutz's "Notice of Right to Sue" on March 28, 2018.

## II.    FACTUAL ALLEGATIONS

BACKGROUND

6.  Lutz began her employment with DMM in or around January 2013 as a Trimmer.

7.  At her time of hire, her rate of pay was ten dollars ($10.00) per hour plus bonuses, but she never received any bonuses despite having met the criteria.

8.  Similarly situated males were paid bonuses.

9.  Upon information and belief, male employees were paid more than female employees for the same work.

10. Approximately one month after Lutz's start date, all male Trimmers were promoted to Grow Techs.

11. Several of the promoted Trimmers started working for DMM the same day as Lutz.

12. In or around 2014, Lutz was promoted to a newly created position of Plant Tech.

13. Similarly situated males who were hired before Lutz and after Lutz were promoted directly to Grow Techs, which was a higher rank with a higher rate of pay than the new position of Plant Tech created specifically for Lutz.

2

14. Periodically, Lutz would work at the DMM location in Yuma, Colorado, where her managers would continually make comments like, "Women have a birth defect that prevent them from growing weed."

15. In January 2015, DMM hired its first Human Resources Director, Barb Purdue ("Purdue").

16. Upon Purdue's hiring, Lutz was finally given an Employee Handbook.

17. On January 13, 2015, Lutz's first employee review was conducted, which was attended by Lutz, Purdue, DMM owner Jim Rice ("Rice"), and Lutz's Supervisor, Chaz Kobayashi.

18. During her employee review in January 2015, Lutz stated that she was being subjected to discrimination.

19. During her employee review in January 2015, Lutz stated that it was disheartening that several male DMM employees were promoted before her and received pay increases.

20. During her employee review in January 2015, Lutz stated that she had been told the prior year that she would be promoted, but she was not promoted. Instead, Lutz saw numerous male employees get promoted even though she was training those employees and providing them with all of her knowledge.

21. DMM believes that women are not suited to work as Grow Techs because the work is physical.

SEX DISCRIMINATION

22. When Lutz first began working at DMM, there were just two other female employees, one of whom started the same day as Lutz.

23. There were five total restrooms at DMM at that time: one gender-neutral restroom on the main level, one women's restroom on the top level and main level, and one men's restroom on the top level and main level.

24. Only the DMM executives were permitted to use the gender-neutral restroom on the main level.

25. Eventually, DMM added two gender-neutral restrooms to the basement because Denver City Ordinance required wheelchair accessible restrooms.

26. As soon as the City of Denver signed off on the basement restrooms, however, DMM immediately converted the basement restrooms into "reservoir rooms" for the grow operation.

27. DMM employees were not permitted to use the reservoir rooms as restrooms because pesticides and nutrients were being poured down the toilets, the doors were removed, and employees were working in those rooms.

28. Since the basement restrooms were converted into reservoir rooms and the main level restroom was for executives only, that left just two women's restrooms that Lutz could technically use. However, she was told that Trimmers were only permitted to use the top floor restrooms.

29. The women's restroom on the top level also doubles as a reservoir room.

30. The female employees were forced to use the restroom stalls while male employees continued to do their work in the same room.

31. Eventually, the women were told that they were being a distraction by going to the bathroom while male employees were trying to utilize the same space for work.

32. Accordingly, DMM management decided to convert the top-level men's restroom into a gender-neutral restroom so that the women's restroom could be utilized solely as a reservoir room.

33. The men's restroom that was converted into a gender-neutral restroom had one urinal and two stalls that all non-executive employees were forced to use.

34. Due to the new arrangement, Lutz witnessed her female coworker accidentally walking in on a male coworker who was urinating.

SEXUAL DISCRIMINATION HARRASSMENT

35. Months after Lutz's start date, she was asked to split her time between bud tending in the store and trimming because Rice believes women should work in the store.

36. Rice was notoriously inappropriate to the female employees, causing one of the female store managers to quit.

37. Rice would place his hand on Lutz's lower back when she was bud tending in the store, which made her feel exceptionally uncomfortable.

38. As a result, Lutz asked if she could discontinue working in the store and strictly work for the grow operation.

39. Around the same time, DMM hired another female employee ("Employee A".)

5

40. Soon after her hire date, Employee A was asked by a male employee for oral sex as compensation for a mattress.

41. When Employee A informed her manager of the sexual harassment she had been subjected to, she was passed up for a promotion.

RETALIATION

42. On March 10, 2015, Lutz was advised by Purdue that Lutz's position was being eliminated and it was her understanding that she was not going to be promoted to Grow Tech.

43. On March 13, 2015, Lutz met with Purdue to discuss the discrimination Lutz was being subjected to. After Lutz provided examples to Purdue of how men are given preferential treatment at DMM, Purdue stated that she agreed that there was favoritism and that was why she had been hired because Lutz's supervisor would not listen to her.

44. On March 27, 2015, Lutz was terminated for allegedly clocking in improperly, despite numerous other employees clocking in the same way while not being discharged or reprimanded.

POST-TERMINATION

45. Lutz applied for and was awarded full unemployment benefits from the Colorado Department of Labor and Employment, Unemployment Insurance Program.

46. On April 30, 2018, a former male Grow Tech at DMM, Kevin McCarrell ("McCarrell"), submitted a witness statement to the EEOC in which he stated that he recommended Lutz for a promotion from Trimmer to Grow Tech, but the Grow Manager

6

laughed and said, "We don't have female growers, we do a lot of physically straining work and they just can't keep up."

47. McCarrell further states, "In the time I was with the company I never saw a woman get promoted into that position."

48. After her employment was terminated, Lutz experienced loss of sleep, anxiety, nervousness, anger and depression.

49. The EEOC investigated Lutz's allegations against DMM and found there is reasonable cause to believe that Lutz was subjected to unequal terms and conditions of employment and discharged in retaliation for engaging in a protected activity.

50. Lutz has not been able to match the compensation she earned while employed at DMM.

### III. CLAIMS FOR RELIEF

FIRST CLAIM FOR RELIEF
(Unequal Terms and Conditions of Employment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

51. Plaintiff realleges and incorporates all previous paragraphs by reference.

52. Lutz avers that by the above acts, DMM discriminated against her because of her sex in the terms, conditions and privileges of her employment.

53. Defendant's failure to promote Lutz despite numerous promotions granted to similarly situated males is a blatant disregard for Lutz's federally protected civil rights.

54. Defendant's failure to pay earned bonuses to Lutz despite paying bonuses to similarly situated males is a blatant disregard for Lutz's federally protected civil rights.

55. Defendant's acts were with malice and reckless disregard for Lutz's federally protected civil rights.

56. The EEOC found that Lutz was "subjected to unequal terms and conditions of employment…in violation of Title VII."

57. Lutz has suffered damages as a result of Defendant's actions.

### SECOND CLAIM FOR RELIEF
(Sexual Harassment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

58. DMM engaged in a pattern of unlawful sexual harassment by not affording Lutz and other female employees a proper place to use the restroom.

59. DMM's through its owner, Rice, engaged in a pattern of unlawful sexual harassment by subjecting Lutz to unwelcome sexual advances.

60. The above-described unwelcome sexual harassment created an intimidating, oppressive, hostile and offensive work environment which interfered with Lutz's emotional wellbeing and her ability to perform her work.

61. DMM knew or should have known that having a men's restroom, but not a women's restroom, was discriminatory and likely to subject the female employees to sexually inappropriate circumstances.

62. DMM knew or should have known of Rice's conduct toward women and failed to respond in a reasonable manner.

63. Lutz's sex was a substantial or motivating factor in Rice's decision to sexually harass her and other female employees.

64. DMM failed to take all reasonable steps to prevent the sexual harassment from occurring, and to protect Plaintiff from sexual harassment.

65. Plaintiff states that the actions of DMM described herein and their failure to adequately supervise, control, or discipline and/or otherwise penalize the conduct, acts, and failures to act as described herein violated 42 U.S.C. § 2000(e) as amended and were taken against Plaintiff because of her sex.

66. As a direct and proximate result of Rice's actions, Lutz has suffered and will continue to suffer emotional distress. Lutz is thereby entitled to general and compensatory damages in amounts to be proven at trial.

## THIRD CLAIM FOR RELIEF
(Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.)

67. Plaintiff realleges and incorporates all previous paragraphs by reference.

68. When Lutz reported discrimination at her performance review and to Purdue on March 13, 2015, she engaged in a protected activity.

69. Subsequent to Lutz reporting discrimination to Purdue, she was terminated for allegedly clocking in improperly (the "Incident"), despite numerous other employees clocking in the same way while not being discharged or reprimanded.

70. Lutz was not offered a Performance Improvement Plan, reassignment or demotion as a result of the Incident, despite having never been disciplined previously.

71. The EEOC found that Lutz was "discharged in retaliation for engaging in a protected activity, in violation of Title VII."

72. Lutz has suffered emotional distress and economic damages as a result of the Defendant's actions.

FOURTH CLAIM FOR RELIEF
(Extreme and Outrageous Conduct)

73. Plaintiff realleges and incorporates all previous paragraphs by reference.

74. Rice's sexist remarks and behavior, as well as the overall treatment of women at DMM, constitute extreme and outrageous conduct.

75. DMM's failure to promote Lutz and to pay her bonuses, despite granting promotions and paying bonuses to similarly situated male employees, is in Violation of the Equal Pay Act of 1963.

76. DMM and its Human Resources Director knew of Lutz's discrimination claims, yet failed to respond in a reasonable manner.

77. DMM engaged in the above-stated conduct recklessly causing Plaintiff severe emotional distress.

78. Plaintiff has had severe emotional distress which was caused by the conduct of DMM employees and executives.

79. Plaintiff has incurred damages, including mental pain and suffering, inconvenience, emotional stress, fear, embarrassment, humiliation, public disgrace, and indignity, in an amount to be determined at trial as a result of DMM's extreme and outrageous conduct.

FIFTH CLAIM FOR RELIEF
(Violation of Colorado Anti-Discrimination Act-C.R.S. §24-34-402 et seq., Intentional Discrimination)

80. Plaintiff realleges and incorporates all previous paragraphs by reference.

69. Defendant subjected Plaintiff to harassment and discharged her based on her protected class.

70. At all times, Plaintiff was qualified for the job at issue.

71. At all times, Plaintiff performed her job in a satisfactory manner.

72. Despite Plaintiff's qualifications and satisfactory job performance, Defendant terminated Plaintiff's employment in response to her report of discrimination.

73. Defendant terminated Plaintiff in violation of the Colorado Anti-Discrimination Act, causing Plaintiff economic and non-economic damages.

74. Defendant's harassment and termination of Plaintiff was intentional, willful and/or reckless, in violation of the Colorado Anti-Discrimination Act.

75. Defendant's intentional and unlawful discrimination resulted in damages to Plaintiff in an amount to be determined at trial.

WHEREFORE, Plaintiff requests the entry of judgment in her favor and against Defendant in an amount to be determined at trial, including back pay, front pay, actual and consequential damages, compensatory damages, punitive damages, liquidated damages, attorney fees and costs incurred in pursuing this matter, pre- and post-judgment interest and penalties pursuant to statute, and for such other and further relief as this Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY**

**DATED** this 25th day of June, 2018.

        Respectfully submitted,

        HOWARD O. BERNSTEIN, P.C.

        */s/ Howard O. Bernstein*
        Howard O. Bernstein, Atty. No. 24476
        Amber J. Reed, Atty. No. 39265
        1111 Pearl Street, Suite 203
        Boulder, Colorado  80302
        Tel:    (303) 494-3321
        Fax:   (303) 544-5955
        e-mail:       howard@bernsteinattorney.com
        e-mail:       amber@bernsteinattorney.com
        ATTORNEYS FOR PLAINTIFF

## VERIFICATION OF COMPLAINT

I, ALEXA LUTZ, an individual, do hereby state that the facts asserted in this Verified Complaint are true and correct to the best of my personal knowledge.

_____
Alexa Lutz, Plaintiff

**STATE OF COLORADO**   } ss.

County of __Denver__

Subscribed and sworn to me this __25__ day of __June_____, 2018, by ALEXA LUTZ, an individual.

Witness my hand and official seal.

My Commission expires: __April 19, 2022__

TIANNA SIMMONS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20184017164
MY COMMISSION EXPIRES APRIL 19, 2022

_____
Notary Public